**2025 UT App 80**

## THE UTAH COURT OF APPEALS

MATTHEW GARNER,
Petitioner,

*v.*

KADINCE, INC.; JARED HALES; AND AARON VENEZIA,
Respondents.

Per Curiam Opinion
No. 20250188-CA
Filed May 22, 2025

Third District Court, Salt Lake Department
The Honorable Mark Kouris
No. 210906879

Douglas M. Durbano and Richard A. Bednar,
Attorneys for Petitioner

Gregory M. Saylin, Kody L. Condos, and Olivia
Cronquist, Attorneys for Respondents

Matthew C. Barneck, Attorney for Order to Show
Cause Respondents Douglas M. Durbano and
Richard A. Bednar

Before JUDGES GREGORY K. ORME, MICHELE M. CHRISTIANSEN
FORSTER, and AMY J. OLIVER.

PER CURIAM:

¶1 This matter is before the court on its Order to Show Cause (OSC) as to why Douglas M. Durbano and Richard A. Bednar (Petitioner's counsel) should not be sanctioned or why other disciplinary action should not issue. The court, having reviewed the filings and heard from the parties at the April 22, 2025 OSC hearing, finds that Petitioner's counsel violated rule 40 of the Utah Rules of Appellate Procedure and imposes sanctions.

BACKGROUND

¶2    Petitioner's counsel filed a timely petition for interlocutory appeal (the Petition). Respondents' counsel filed a timely opposition to the Petition. In the opposition to the Petition, Respondents' counsel identified multiple cases cited by Petitioner's counsel that were miscited or appeared to have been created by artificial intelligence (AI). Respondents' counsel noted, "it appears that at least some portions of the Petition may be AI-generated, including citations and even quotations to at least one case that does not appear to exist in any legal database (and could only be found in ChatGPT[1]) and references to cases that are wholly unrelated to the referenced subject matter." As the primary example, Respondents' counsel pointed to the citation to "*Royer v. Nelson*, 2007 UT App 74, 156 P.3d 789" as an AI "hallucinated" case that does not exist anywhere other than on ChatGPT.[2]

¶3    Concerned that the Petition contained citations to non-existent and inapposite cases, this court ordered Petitioner's counsel to appear and show cause why they should not be sanctioned. In a filing titled "Petitioner's Request to File Amended Petition for Permission to Appeal an Interlocutory Order,"[3]

---

1. ChatGPT is an AI chatbot that uses natural language processing to create humanlike conversational dialogue. The language model can respond to questions and compose various written content.

2. An AI hallucination "occurs when an AI database generates fake sources of information," which appear to be accurate. *See Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 493 (D. Wyo. 2025).

3. Our ruling on the Petition and on Petitioner's Request to File Amended Petition for Permission to Appeal an Interlocutory Order is set forth in a separate order issued on the same date as this opinion.

Petitioner's counsel acknowledged "the errors contained in the Petition" and apologized to both this court and Respondents' counsel. Petitioner's counsel also offered "to make amends" by paying Respondents' attorney fees incurred in responding to the Petition, and they stated that they would appear at the OSC hearing.

¶4      On April 22, 2025, Petitioner's counsel appeared at the OSC hearing along with Petitioner. Petitioner's counsel was represented by Matthew C. Barneck for the limited purpose of the OSC proceeding. Respondents' counsel also attended the hearing but did not address the court.

¶5      Petitioner's counsel acknowledged that the Petition contained fabricated legal authority, which was obtained from ChatGPT, and they accepted responsibility for the contents of the Petition. Petitioner's counsel explained that the Petition had been prepared by an unlicensed law clerk, employed by their law firm, who used ChatGPT in the drafting of the Petition. Mr. Durbano was not involved with the drafting of the Petition and Mr. Bednar did not independently check the accuracy of the Petition before signing and filing it with the court. Petitioner's counsel were not aware that the law clerk was using ChatGPT in the preparation of their firm's legal work, and they acknowledged that the use of AI had not been previously addressed at their firm, either formally or informally. Petitioner's counsel explained that their law firm did not have any policy in place addressing the use of AI but that they had initiated one since receiving notice of the OSC proceeding.

## ANALYSIS

¶6      The use of AI in the preparation of legal filings has not been previously addressed by Utah courts. For guidance, this court looks to other jurisdictions that have addressed the use of AI in legal filings involving fake legal precedent. One of the seminal

cases cited by other jurisdictions in this developing area of law is *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023). In *Mata*, the court noted, "[T]here is nothing inherently improper about using a reliable [AI] tool for assistance. But existing rules impose a gatekeeping role on attorneys to ensure the accuracy of their filings." *Id.* at 448.

¶7      As is most likely common knowledge in this profession, "[l]egal research has improved over time, going from the use of digest books to online databases like Lexis and Westlaw." *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 493 (D. Wyo. 2025). And now, "[l]itigators are beginning to make the jump from those databases into the world of [AI]." *Id.* "When done right, AI can be incredibly beneficial for attorneys and the public." *Id.* "However, the current state of AI has its shortcomings." *Id.* The legal profession must be cautious of AI due to its tendency to hallucinate information. *See id.* While technology continues to evolve, attorneys must verify each source cited in their legal filings and "must still read the case to ensure the excerpt is existing law to support their propositions and arguments." *Id.* And as "attorneys transition to the world of AI, the duty to check their sources and make a reasonable inquiry into existing law remains unchanged." *Id.*

¶8      We agree that the use of AI in the preparation of pleadings is a legal research tool that will continue to evolve with advances in technology. However, we emphasize that every attorney has an ongoing duty to review and ensure the accuracy of their court filings. In the present case, Petitioner's counsel fell short of their gatekeeping responsibilities as members of the Utah State Bar when they submitted a petition that contained fake precedent generated by ChatGPT.

¶9      Rule 40 of the Utah Rules of Appellate Procedure provides for the sanction and discipline of attorneys and parties at the appellate level. *See* Utah R. App. P. 40. Rule 40 is the counterpart

to rule 11 of the Utah Rules of Civil Procedure, which provides for the sanctioning of attorneys and parties at the trial level, *see* Utah R. Civ. P. 11(c). Rule 40(b) provides, in relevant part, that the "signature of an attorney . . . certifies that to the best of the person's knowledge formed after an inquiry reasonable under the circumstances . . . the legal contentions are warranted by existing law." *See* Utah R. App. P. 40(b). Rule 40(c) provides that this court may sanction and discipline attorneys and parties "after reasonable notice and an opportunity to show cause to the contrary" for failure to comply with the court rules or any order of the court. *See id.* R. 40(c).

¶10   Here, the Petition failed to comply with rule 40. A fake opinion is not "existing law" that can support a party's legal contention. *Id.* R. 40(b)(2); *see also Mata*, 678 F. Supp. 3d at 461 ("A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law."). And the signature of Mr. Bednar on the Petition served to "certif[y] that to the best of [his] knowledge formed after an inquiry reasonable under the circumstances," the "legal contentions are warranted by existing law." Utah R. App. P. 40(b). Mr. Bednar admits that he failed to comply with rule 40.[4]

¶11   "Many harms flow from the submission of fake opinions. The opposing party wastes time and money in exposing the deception." *Mata*, 678 F. Supp. 3d at 448 (footnote omitted). Judicial resources are diverted from other pressing, legitimate

---

4. We also considered whether Petitioner's counsel violated rule 3.3 of the Utah Rules of Professional Conduct. Although Petitioner's counsel made "a false statement of . . . law to a tribunal," we find that their conduct fell short of the level of intent required by the rule. *See* Utah R. Pro. Conduct 3.3(a) ("A lawyer must not knowingly or recklessly: (1) make a false statement of fact or law to a tribunal . . . .").

work. And "[t]he client may be deprived of arguments based on authentic judicial precedents." *Id.*

¶12 Although the court appreciates Petitioner's counsel's acceptance of responsibility for their conduct, filing pleadings or other legal documents without taking the necessary care in their preparation is an abuse of the judicial system and subject to sanctions. *See id.* at 460. This court takes the submission of fake precedent seriously and finds that sanctions are warranted.

¶13 In considering appropriate sanctions, this court is cognizant that the circumstances here are different from some other cases addressing AI-generated fake precedent. In *Mata*, the attorneys initially misled the judge after discovery of the fake precedent, and they continued to claim that the cases were real. *See id.* at 449 (noting the attorneys did not admit their reliance on AI-generated fake precedent for nearly three months). In *United States v. Hayes*, No. 24-cr-0280, 2025 WL 235531 (E.D. Cal. Jan. 17, 2025), the attorney continued to claim that the fake precedent was simply an "inadvertent citation error." *Id.* at *10. Petitioner's counsel's conduct has not been similarly egregious, and they have accepted responsibility for their misrepresentations to this court.

¶14 However, regardless of Petitioner's counsel's contrition, harm was done as a result of their acts. Respondents' counsel were required to expend additional resources researching the citations and source of the hallucinated legal authority. Valuable judicial resources were diverted from considering pending cases to addressing Petitioner's counsel's misrepresentations.

¶15 Opposing counsel cannot be required to independently verify the veracity of each citation in another's court filings. And Utah courts cannot be charged with independently checking the veracity of each citation in an attorney's filings. Our system of justice must be able to rely on attorneys complying with their duty of candor to the court.

CONCLUSION

¶16 This court has considered the specific circumstances of this case and reviewed sanctions imposed by other jurisdictions for citing hallucinated authority. We believe that sanctions are appropriate here because Petitioner's counsel failed to meet their obligations under rule 40 of the Utah Rules of Appellate Procedure. But we are mindful that Petitioner's counsel admitted their violation and accepted responsibility. Therefore, we order the following sanctions:

> (1) Mr. Bednar shall pay the attorney fees of Respondents for the time spent responding to the Petition and attending the OSC hearing;[5]
>
> (2) Petitioner's counsel shall refund to Petitioner all fees charged and paid for the filing of the Petition or related thereto within seven days of the date of this order;[6] and
>
> (3) Mr. Bednar shall pay $1,000 in the form of a donation to "and Justice for all" within fourteen days of the date of this order and file proof of payment with this court.

––––––––––

5. Respondents' counsel are ordered to provide an itemized statement (redacted as appropriate) to Mr. Bednar for the time spent responding to the Petition and attending the OSC hearing within ten days of the date of this order. Mr. Bednar shall pay the fees within ten days of receiving the statement.

6. If bills have not yet been submitted or paid for all such work, then Petitioner's counsel shall refrain from submitting them or collecting on them.