Cassata v Michael Macrina Architect, P.C. (2026 NY Slip Op 26014)

[*1]

Cassata v Michael Macrina Architect, P.C.

2026 NY Slip Op 26014

Decided on January 27, 2026

Supreme Court, Suffolk County

Kevins, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 27, 2026
Supreme Court, Suffolk County

Michele Cassata, Ross Cassata, Plaintiffs,

againstMichael Macrina Architect, P.C., Defendant.

Index No. 617183/2025

Ruskin Moscou Faltischek, P.C.Attorneys for PlaintiffsBY: Adam H. Russ, Esq.Milber Makris Plousadis & Seiden, LLPAttorneys for DefendantBY: Thomas M. Fleming, Esq.Salenger Sack Kinnel & Bavaro, LLPAttorneys for Maria-Eleni Kiousenterlis, Esq.BY: Edward J. Nitkewicz, Esq. 

Linda Kevins, J.

A sanctions hearing was held before this Court on December 22, 2025 pursuant to a sua sponte December 9, 2025 show cause order. Such order directed the defendant's counsel Maria-Eleni Kiousenterlis, Esq. ("Kiousenterlis"), the Law office of Milber Makris Plousadis & Seiden, LLP ("MMPS"), by its managing attorney/partner and/or supervising attorney for Kiousenterlis and, plaintiff's attorneys, Adam H. Russ, Esq. and Rachel A. Morgenstern, Esq, to show cause on December 22, 2025, at 9:30 a.m., before this Court, why Kiousenterlis' and MMPS should not be sanctioned for alleged frivolous and unethical conduct, in violation of 22 NYCRR §§ 130-1.l., 1.2; and the Rules of Professional Conduct, 22 NYCRR §§ 1200 at Rules 1.1 (a), 1.3, 3.3, 3.4, 4.1, 5.1, 5.2, 8.3 and 8.4, for their conduct in submitting motion papers to this Court, which are alleged to: (1) contain inaccurate or non-existent caselaw citations and/or quotations; (2) cite caselaw that does not support the proposition advanced by defendant; (3) plagiarize legal briefs by a third-party and/or fail to properly credit and/or cite to portions of defendant's legal [*2]submissions that were authored by a third-party.
On December 22, 2025, defendant's counsel Maria-Eleni Kiousenterlis, Esq. ("Kiousenterlis") appeared before this Court with counsel Edward J. Nitkewicz; The Law Office of Milber Makris Plousadis & Seiden, LLP appeared by Thomas M. Fleming II, Esq. ("Fleming"), its supervising attorney for Kiousenterlis; Plaintiff's counsel Adam H. Russ appeared; Plaintiff's attorney Rachel A. Morgenstern did not appear as Mr. Russ advised she was ill. During the course of the proceedings, the Court had the opportunity to determine issues of credibility by reviewing the record, observing the witnesses and the evidence presented. Houston v Koszer, 178 AD3d 781 [2d Dept. 2019].
Upon the admissible and credible evidence, the Court makes the following findings and issues sanctions as stated herein.
I. PROCEDURAL HISTORY
Plaintiff commenced the within action seeking damages against defendant resulting from an alleged house collapse at premises known as 945 Dune Road, Westhampton Dunes, Town of Southampton, County of Suffolk, State of New York. Plaintiff alleges that defendant provided a proposal dated January 16, 2021, "for an architectural redesign of the House, including an addition that would enclose existing deck space" (New York State Court Electronic Filing [NYSCEF] P Compl NYSCEF 2, at 2). The plaintiff allegedly accepted the defendant's proposal and construction began sometime thereafter. In her complaint, plaintiff alleges that on January 24, 2023, "when the framing of the House was near complete, the House collapsed . . . [t]o be clear, the entirety of the wood framing of the House collapsed." (Id.) Following the collapse, the defendant allegedly assisted the plaintiff in redesigning the house so it would be structurally sound. Plaintiff alleges two causes of action, negligence/professional malpractice and breach of contract. Plaintiff argues that defendant breached its duty based on defendant's alleged poor initial design and that defendant did not adhere to industry standards during its initial design, both of which resulted in the house collapse. Plaintiff seeks monetary damages in an amount to be determined at trial.
On July 25, 2025, defendant interposed a verified answer asserting thirty-six (36) affirmative defenses (D Answer NYSCEF 4).
By notice of motion filed October 22, 2025, plaintiff moved to strike all of defendant's affirmative defenses or, in the alternative, to strike thirty-two (32) of defendant's thirty-six (36) affirmative defenses (P Not. of Mot. NYSCEF 8).
Defendant opposed such application by written opposition filed on November 17, 2025 (D Aff Opp NYSCEF 17, D Mem of Law NYSCEF 22).
Thereafter, plaintiff filed both a reply to defendant's opposition and letters to the Court (P Aff Supp NYSCEF 25, P Nov 24, 2025 Letter NYSCEF 31, P Noc 26, 2025 Letter NYSCEF 33) alleging that "[d]efendant's counsel appears to have opposed [p]laintiff's motion seeking to strike her palpably insufficient and boilerplate affirmative defenses by plagiarizing a brief that was generated by artificial intelligence ('AI'). In doing so, counsel makes a mockery of this Court" (P Mem Law NYSCEF 30, at 1). Additionally, the plaintiff claimed that the defendant's counsel "plagiarized nearly the entirety of a brief submitted by Rachel Lee Dreher of Dreher Law Group PLLC, in an unrelated case. In that unrelated case, Judge Lyle E. Frank issued a decision expressly condemning Ms. Dreher's use of 'non-existent cases'" (NYSCEF 31, at 1-2), "See, For [*3]A Financial Asset Securitization 2021, LLC v Teona Ostrov Public Relations, LLC, No. 155475/2024, 2025 WL 334218, at *1 [Sup Ct NY County, Jan 24, 2025]" (Id, at 1, Fn 1).
By letter to the Court dated November 25, 2025, Kiousenterlis responded to plaintiff's accusations of plagiarism and misuse of AI, by stating that "[t]he undersigned sincerely apologizes to the Court for certain sourcing (which Plaintiff's refers to as 'plagiarized') and citation inaccuracies in my original submission" (D Letter Nov 25, 2025 NYSCEF 32, at 1). Kiousenterlis requested to either withdraw the original opposition and permit another attorney in her firm to submit new papers (a "redo") or, in the alternative, to permit her to withdraw "all references to the alleged improperly cited case law" (Id.). In Kiousenterlis' letter to the Court, although not granted permission to file a sur-reply and in violation of Part 29 Court Rules, Kiousenterlis also inappropriately advanced positions in further support of her opposition to plaintiff's motion.
On November 26, 2025, by letter filed with the Court, although plaintiff vehemently opposed any course of corrective conduct on behalf of defendant, in an apparent effort to move forward, plaintiff "proposed a redline striking through the language, which [d]efendant has already agreed to strike in her letter, as well as the improper new substantive arguments" (NYSCEF 33, at 2); also the plaintiff reserved all rights and remedies, including a request for sanctions against the defendant.
Finally, on December 17, 2025, Fleming, MMPS's supervising attorney for Kiousenterlis, filed an Affirmation in Response to Court's Show Cause Order (D Aff Resp to OTSC NYSCEF 38) wherein he states that Kiousenterlis is no longer associated with MMPS and that he had no indication from his level of review that Kiousenterlis' work was plagiarized or improperly relied upon by Artificial Intelligence. Additionally, Fleming states that to the extent that AI usage is alleged, Kiousenterlis was in direct violation of the MMPS employee handbook provisions regarding the use of AI. Further, he states that "MMPS has conducted additional firmwide training on the importance of complying with our handbook provisions regarding the use of AI" (Id., at 3 Para. 9) and he includes those provisions of the handbook as an exhibit (D Ex A NYSCEF 39).
II. SANCTIONS HEARING
At the outset, the Court expanded the hearing to include allegations of frivolous and unethical conduct in violation of the NY Rules of Professional Conduct (NY Comp. Codes R&Regs.), 22 NYCRR Part 1200.0, Rule 3.1, and provided the parties an opportunity to review that rule prior to going forward. Additionally, the Court provided the parties with the format for the proceeding and provided for each allegation to be specifically raised with an opportunity for each defendant subject to sanctions to respond with a full opportunity to be heard. Additionally, plaintiff's counsel submitted an "Affirmation in Support of Award of Attorney Fees" for related legal services rendered in connection with "the hallucinated case law and misattributions submitted by Defendant in its Opposition" (P Aff Atty Fees NYSCEF 41, P Ex A NYSCEF 42).
Six specific allegations [FN1]
regarding Kiousenterlis' alleged frivolous conduct are detailed in [*4]plaintiff's Reply Memorandum of Law (NYSCEF 30), Affirmation in Further Support (NYSCEF 25) and by plaintiff at the hearing.
Plaintiff claims that two cases cited by Kiousenterlis in her opposition do not exist:
1. Harris v Seward Park Housing Corp., 147 AD3d 589 (1st Dep't 2017) and2. DiLorenzo v D.C. & D. Transp. Corp., 39 AD2d 950 (2nd Dept, 1972).Additionally, plaintiff alleges that a quotation cited in Kiousenterlis' opposition does not exist:
3. A quotation attributed to Harris v Seward Park Housing Corp., 147 AD3d 589 (1st Dep't 2017) does not exist except that it is found in only two places - defendant's opposition brief and the brief from which she allegedly plagiarized.Further, plaintiff claims that Kiousenterlis cites two cases for specific propositions for which they do not stand and do not support:
4. New York Univ. v Cont'l Ins. Co., 87 NY2d 308, 323 (1995) and5. Becker v Elm Air Conditioning Corp., 143 AD2d 965, 966 (2nd Dep't 1988).Finally, plaintiff alleges that Kiousenterlis "plagiarized" entire portions of someone else's brief in an unrelated case (P Ex B NYSCEF 27), without citing to it and without verifying its content and that the Court for which such brief was submitted issued a decision expressly condemning the author's use of non-existent cases (P Ex C NYSCEF 28):
6. For a Financial Asset Securitization 2021, LLC v Teona, 2025 WL 334218 (2025)During the hearing, both Kiousenterlis and Fleming appeared sincerely sorry and conceded to the truth of the above six allegations. However, Kiousenterlis denied she used AI (otherwise known as Artificial Intelligence, Generative Artificial Intelligence, or GenAI) in her research and stated that she found a brief on Westlaw which she incorporated into her opposition without verifying the citations, quotations, and propositions of law. Although that may be plausible, the Court is not convinced Kiousenterlis did not use AI in her research that located the brief. It is incredible that an attorney would "copy and paste" from someone else's brief without verifying their sources, citations, quotations, propositions of law, and reading the ultimate court decision upon which the brief was submitted, and ultimately reviewed and considered. It is actually more likely and maybe even slightly less offensive—but also sanctionable—that an attorney who relied on Artificial Intelligence to conduct research obtained a very convincing and well-written legal argument, and therefore did not take the time to verify the same.
In finding it unpersuasive that Kiousenterlis did not use Artificial Intelligence to conduct her research, the Court also considered two statements by Kiousenterlis' supervising attorney, Fleming. After learning of the allegations and after the Court scheduled a sanctions hearing regarding same, and presumambly after his investigation of these serious allegations, Fleming stated in his December 17, 2025 Affirmation in Response to Court's Show Cause Order that, to the extent that AI usage is alleged, Kiousenterlis was in direct violation of the MMPS employee handbook provisions regarding the use of AI. Although when questioned at the hearing, Fleming denied direct knowledge that Kiousenterlis used AI, he asserted that he thinks his firm recently obtained the Artificial Intelligence version of Westlaw a couple of months ago - which was during the relevant time period that the plaintiff's motion, defendant's opposition, and plaintiff's [*5]reply were filed. Fleming also stated that he does not use it as he does not "really know how to use any AI stuff." (December 22, 2025 Sanctions Hrg Tr 63:10-11). Further, as pointed out in plaintiff's Reply Memorandum of Law, "[i]t is quite literally hard to imagine an Opposition that is less tailored to this particular action," (NYSCEF 30, at 2) which is an indication of the use of Artificial Intelligence.
Further, Kiousenterlis stated she "learned of these cases with the use of AI when it was brought to our attention by plaintiff's counsel." (Tr 46:18-21). However, when the Court questioned her further about the "'use of AI,' what use of AI are you talking about" (Id. 46:2-23), Kiousenterlis said "[t]hrough Westlaw, the brief that I was utilizing on Westlaw and, in turn, that brief contained AI-generated case, those cases I am referring to." (Id. 46:24-25, 47:1-3) Kiousenterlis also stated that she was sure they were AI generated cases. (Id. at 47) Interestingly, the January 24, 2025 Decision rendered by the Court in For a Financial Asset Securitization 2021, LLC, does not mention AI or Artificial Intelligence anywhere in its decision or the footnote. The Court speaks of "non-existent cases and a quotation that did not appear in any cases cited" For a Financial Asset Securitization 2021, LLC, 2025 WL 334218, footnote 1.
With respect to whether or not Kiousenterlis used AI in her research, it is also noteworthy that when provided a final opportunity to make any further statements for the record, every attorney directed most of their comments to the challenging issue of Artificial Intelligence.
In any case, whether Kiousenterlis used AI to conduct her research or not, citing non-existent cases, quotations, and specific propositions of law for which they do not stand and/or do not support, is unethical and sanctionable conduct. "Citing nonexistent case law or misrepresenting the holdings of a case is making a false statement to a court. It does not matter if [generative AI] told you so." United States v Hayes, 763 F. Supp. 3d 1054, 1067, [D.C.E.D. Cal. Jan. 17, 2025] citing Maura R. Grossman, Paul W. Grimm, & Daniel G. Brown,Is Disclosure and Certification of the Use of Generative AI Really Necessary?, 107 Judicature 68, 75 (2023).
To date, there is a substantial body of case law from both federal and state courts addressing the frivolous, unethical and sanctionable conduct of Artificial Intelligence "hallucinations," which consist of nonexistent decisions, nonexistent quotations, and propositions of law that are not supported by cases cited. In what appears to be the first widely-published court decision to address these hallucinations, the Court in Mata v Avianca, Inc., 678 F. Supp. 3d 443 [S.D.NY June 22, 2023] advised:
Many harms flow from the submission of fake opinions.The opposing party wastes time and money in exposing the deception. The Court's time is taken from other important endeavors. The client may be deprived of arguments based on authentic judicial precedents. There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. It promotes cynicism about the legal profession and the American judicial system. And a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity. Id. at 448-449.More recently, in the New York State Court case of Ader v Ader, 2025 WL 2831332 [Sup Ct NY County Oct. 1, 2025] the Supreme Court stated that:
Use of AI is not the problem per se. The problem arises when attorneys abdicate their responsibility to ensure their factual and legal representations to the Court—even if originally sourced from AI—are accurate. "The court relies on attorneys to do their jobs: [*6]advocate for their clients using law and facts—real law and real facts" (Enterprise v Shvo, NYSCEF 154 in Index No. 653221/2024 [Sup Ct, NY County, Dec. 24, 2024] [Masley, J.]). When attorneys fail to check their work—whether AI generated or not—they prejudice their clients and do a disservice to the Court and the profession. Id. at *3.The recently published inaugural annual report, the New York State Unified Court System Advisory Committee on Artificial Intelligence and the Courts Annual Report to the Chief Judge and Chief Aministrative Judge of the State of New York, December 2025, is a thorough record of findings, recommendations, and policy proposals based upon extensive research and collaboration among stakeholders, and comprised of six specialized subcommittees. This comprehensive model report is the result of the efforts of the Committee and the foresight of New York State Chief Judge Rowan D. Wilson and Chief Administrative Judge Joseph A. Zayas who established the Advisory Committee on Artificial Intelligence and the Courts to conduct such inquiry and investigation. The report addresses the issue of fabricated citations and information in court filings and concludes that the existing rules are sufficient because "by signing a paper and submitting it to [ ] court, an attorney or party certifies that the paper does not contain any false material factual statement or any frivolous legal argument (see 22 NYCRR §§ 130-1.1, 130-1.1a) and an attorney who submits any paper to [ ] court is additionally bound by the Rules of Professional Conduct." In this instant matter, just as the Court in Grymes Development Company v. Fodera, 2025 WL 3222950 [Sup Ct Richmond County Nov. 10, 2025], pointed out "[h]ere, there was no reasonable inquiry; had a reasonable inquiry been undertaken, the problem would have immediately revealed itself." Id. at *3.
Since the decision in Mata, presumably the bench and bar have been forewarned about the ethical violations of submitting filings with nonexistent decisions, nonexistent quotations, and/or propositions of law that are not supported by cases cited. The message is clear: to avoid sanctions, lawyers must verify all submissions through a reputable authoritative source. However, there have been a proliferation of cases demonstrating that many attorneys fail to do so and consequently subject themselves to sanctions. Two websites have documented the abundance of these cases that address the issue: https://www.damiencharlotin.com/hallucinations/. and https://www.ailawlibrarians.com/2025/08/10/coming-soon-the-interactive-genai-legal-hallucinations-tracker-sn eak-peek-today/ as cited by Ralph Artigliere (ret.) and Prof. William F. Hamilton, From the EDRM Blog: Reasonable or Overreach? Rethinking Sanctions for AI Hallucinations in Legal Filings, footnote 3, Aug, 18, 2025, edrm.net/2025/08/reasonable-or-overeach-rethinking-sanctions-for-ai-hallucinations-in-legal-filings.
III. LAWYERS' ETHICAL DUTIES
Whether in New York State court, federal court, or state courts around the country, the courts all provide the same conclusion, a court filing of nonexistent decisions, nonexistent quotations, and/or propositions of law that are not supported by cases cited, is frivolous, unethical, and sanctionable conduct. In federal court, Rule 11 of the Federal Rules of Civil Procedure governs, and in New York State court, the governing authority is 22 NYCRR §§ 130-1.1, 130-1.1a, and the NY Rules of Professional Conduct 22 NYCRR § Part 1200.0. "[M]ost state sanctioning authority is based on frameworks with the same underlying principles as [*7]federal law." From the EDRM Blog: Reasonable or Overreach? . . . . footnote 5. In federal courts and state courts, court decisions deciding these issues recognize and cite cases from both federal and state courts. See Hall v Academy Charter School, 2025 WL 2256653 [E.D.NY Aug. 7, 2025], Ader, 87 Misc 3d 1213[A], Idehen v Stoute-Phillip, 2025 WL 2178395 [N.Y .City Civ Ct Queens County July 29, 2025]. The following NY Rules of Professional Conduct have been considered by this Court because they are relevant to the conduct in this matter.
A. Lawyer's Duty Prohibiting Misconduct, Rule 8.4
Rule 8.4. Misconduct provides that: "[a] lawyer or law firm shall not: . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation . . . ." With respect to the issue of plagiarism, the Court is afforded some guidance from Formal Opinion 2018-3: Ethical Implications of Plagiarism in Court Filings issued by the Committee on Professional Ethics [NY City B. Ass'n]. Addressing the implications of ethical violations pertaining to "use of another's writing in a brief or litigation filing," the opinion differentiates between academic papers and legal briefs, as follows:
Unlike academic papers (or writing samples), which purport to reflect the author's original work and analysis, legal briefs are submitted to present an argument on behalf of a client, and their value derives from their persuasiveness, not from their originality of thought or expression. A lawyer's signature on a brief is not a representation of authorship, much less of sole authorship, but rather a commitment to take responsibility for the contentions in the brief and an implied representation that the brief is not frivolous. For these reasons, . . . copying from other writings without attribution in a litigation filing is not per se deceptive and therefore is not a per se violation of Rule 8.4(c).. . . [h]owever, . . .the filing lawyer is responsible for the brief and cannot rely on the prior author to ensure compliance with the Rules. Rule 1.1(a) (competence), Rule 1.3 (diligence), Rule 3.1 (non-meritorious claims and contentions), and Rule 3.3 (conduct before a tribunal), are implicated when a lawyer files a document in court. In addition, if the lawyer subjectively intends to commit deception by omitting a citation in a litigation filing, then the lawyer may be violating Rule 8.4(c) and risks discipline under that rule as well Formal Opinion 2018-3, supra.Here, although Kiousenterlis intentionally omitted citations in her opposition, the Court is not convinced that Kiousenterlis intended to commit deception by doing so. Therefore, the Court finds that Kiousenterlis did not violate Rule 8.4. However, Kiousenterlis' conduct of filing an opposition paper containing nonexistent decisions, nonexistent quotations, and propositions of law that are not supported by cases cited, and plagairism, do require an analysis of whether such conduct violates other ethical rules. Additionally, with respect to Fleming and MMPS who are listed as the attorneys of record in NYSCEF, the "attorney of record, regardless of degree of involvement, is accountable for the accuracy of filings submitted under his or her name." Mattox v Product Innovations Research, 2025 WL 301228 at *9 [D.C. E.D. Okla. Oct. 22, 2025].
B. Lawyer's Duty to Provide Competent Representation, Rule 1.1
Rule 1.1. Competence provides: "(a) A lawyer should provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Comment [5] of such rule states under the heading "Thoroughness and Preparation, " that "[c]ompetent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation."
As the Court in Benjamin v Costco Wholesale Corporation, 779 F. Supp. 3d 341 [E.D.NY April 24, 2025] explained:
Clients hire attorneys to perform legal research, investigate the merit of their claims, and provide the best argument in support of their case to the Court. The Court cannot permit attorneys to delegate these fundamental tenants of the attorney-client relationship to an AI platform and submit the product to the Court without review. Lawyers in the State of New York are tasked with "provid[ing] competent representation to a client." NY Rules of Professional Conduct Rule 1.1(a). "Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Id. at 349.Here, the conduct of the defendant's attorneys as delineated herein, filing with the Court an opposition containing nonexistent cases and quotations, and unsupported propositions of law, demonstrate that the defendant was not provided competent representation by its attorneys. As the Court in Benjamin, stated:
These phony submissions raise serious problems. To start with the obvious, an attorney who submits fake cases clearly has not read those nonexistent cases . . . these made-up cases create unnecessary work for courts and opposing attorneys alike. And perhaps most critically, they demonstrate a failure to provide competent representation to the client. Id. at 343.Further, with respect to the conduct of plagiarism, Formal Opinion 2018-3, supra at 14, states that a lawyer may be providing ineffective advocacy for a client because "[i]f the lawyer copies extensively and inaptly from a treatise or prior judicial opinion, the brief may give the court little guidance on how the law applies to the facts of the case and may leave the adversary's arguments unrebutted . . . '([C]ourts are especially concerned not so much with the mere copying of someone else's work, but rather the act of copying in lieu of customizing a brief to the issues and circumstances of the case.'"(citations omitted).
Accordingly, the Court finds that Kiousenterlis, Fleming and MMPS violated Rule 1.1 by their frivolous and unethical conduct of filing opposition with the Court that contained nonexistent case citations and quotations, and unsupported propositions of law, that also were not tailored to the instant case as well as plagiarism, all which demonstrate a failure of Kiousenterlis, Fleming and MMPS to provide competent representation to their client.
C. Lawyer's Duty to Keep Abreast of Technology, Rule 1.1
Comment [8] of Rule 1.1. states: "To maintain the requisite knowledge and skill, a lawyer should . . . (ii) keep abreast of the benefits and risks associated with technology the [*8]lawyer uses to provide services to clients or to store or transmit confidential information."
"A lawyer has a duty to be competent not only today but also tomorrow, and to be competent not only in substantive law and procedure but also in technology (citation omitted)" Simon's NY Rules of Prof. Conduct § 1.1:13 Acquiring and maintaining technological competence: Rule 1.1, Comment [8]. As AI tools become more commonplace in law firms of all sizes "[t]echnological competence is especially important." Id.
The Court finds incompatable the concept that a supervising attorney can properly supervise an associate regarding the proper use of technology provided by the law firm (Artificial Intelligence version of Westlaw), with the concept herein conceded that the supervising attorney does not know how to use it.
The N.Y.S. U.C.S. Advisory Committee Report on Artificial Intelligence and the Courts, December 2025, at page 14, states that the AI-enhanced versions of Westlaw and Lexis "fall well short of being fully trustworthy." Although these AI-enhanced versions are different from the basic versions and are constantly improving, such conclusion as detailed in the report relied on a 2024 study by Stanford University which found that "the Lexis product hallucinated in 17% of its responses, while responding accurately 65% of the time, and the Westlaw product hallucinated in 33% of its responses, while responding accurately 42% of the time" Id. at 14-15, and footnote 14, [citing Varun Magesh, Faiz Surani, Matthew Dahl, Mirac Suzgun, Christopher D. Manning, and Daniel E. Ho, Hallucination-Free? Assessing the Reliability of Leading AI Legal Research Tools, Journal of Empirical Legal Studies, Vol. 22, Issue 2, at 216-242 [2025], https://dho.stanford.edu/wp-content/uploads/Legal_RAG_Hallucinations.pdf.] Accordingly, the Subcommittee on Court Administration and Management cautioned in its Interim Policy that, "[e]ven when using AI-enhanced features that have been incorporated into established legal research platforms, any content generated by AI should be independently verified for accuracy." Id. at page 15.
This Court is cognizant of the trepidation that many attorneys have with using the latest technology - generative Artificial Intelligence. But fear must not deter us from fulfilling our obligations. It should not prevent us from doing what needs to be done. We all need to learn this technology. It is not a train that is coming, it is here and speeding fast and we are on it whether we like it or not. As professionals we need to educate ourselves so that we understand how to use this technology correctly and make appropriate decisions whether we are using it, our associates or staff are using it, our clients are using it, or we are confronted with it by an adversary in a filed paper or potential evidence. With respect to legal research and drafting, the proper use of Artificial Intelligence can be more efficient by far, but it is vital to verify when using AI.
Given all of the above, the Court finds that Kiousenterlis, Fleming and MMPS violated Rule 1.1 by failing to keep abreast of technology as delineated herein.
D. Lawyer's Duty to be Diligent, Rule 1.3
Rule 1.3 (a) Diligence states that, "[a] lawyer shall act with reasonable diligence and promptness in representing a client," and "[a] lawyer shall not neglect a legal matter entrusted to the lawyer." Copying large sections of a brief without tailoring the brief to the facts may violate Rule 1.3. Formal Opinion 2018-3, supra at 15.
The Court finds that Kiousenterlis, Fleming and MMPS violated Rule 1.3. Such finding is based upon Kiousenterlis' conduct of copying large sections of a brief containing unvetted [*9]citations and quotations and unsupported propositions of law that were not tailored to the facts of the case, and which comprised a substantial portion of the defendant's opposition.
E. Lawyer's Duty Regarding Non-Meritorious Claims and Contentions, Rule 3.1
Rule 3.1 (a) provides that: "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous." Rule 3.1 (b) states: "[a] lawyer's conduct is 'frivolous'for purposes of this Rule if: . . . (3) the lawyer knowingly asserts material factual statements that are false." Additionally, "the submission of nonexistent cases clearly qualifies as frivolous conduct under 22 NYCRR § 130-1.1(c)." Idehen, at *7.
With respect to the conduct of plagiarism, lawyers must "inform themselves about the facts of their clients' cases and the applicable law, and determine that they can make good-faith arguments in support of their clients' positions." Rule 3.1, Comment 2; and see Formal Opinion 2018-3, supra.
Here, this Court finds that Kiousenterlis and MMPS violated Rule 3.1 by citing nonexistent cases, quotations, and unsupported propositions of law which is found to be frivolous conduct pursuant to 22 NYCRR § 130-1.1. Additionally, the Court finds that Kiousenterlis, Fleming and MMPS violated Rule 3.1 by plagiarizing from another's brief without informing themselves about the applicable facts and law thereby preventing them from making good-faith arguments in support of their client's position.
F. Lawyer's Duty of Candor, Rule 3.3
A lawyer has an ethical duty to be candid with the court at all times and must promptly correct any false statements of fact or law previously made. Rule 3.3 of the New York Rules of Professional Conduct - Conduct Before a Tribunal provides that a lawyer "shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer"
Here, neither Kiousenterlis nor her supervising attorney, Fleming, was candid with the Court in the first instance after the alleged frivolous and unethical conduct was brought to their attention. Prior to the hearing and both in response to plaintiff's Reply Memorandum and letters advising Kiousenterlis of her alleged frivolous conduct, Kiousenterlis did not candidly admit to the Court and her adversaries how she committed such errors. In fact, in her response letter to the Court (NYSCEF 32), Kiousenterlis specifically failed to include such information. The letter, although apologetic and admitting to "citation inaccuracies", never identified the "sourcing," nor did it admit to "plagiarizing," or the other allegations including the nonexistent cases, nonexistent quotation, and unsupported propositions of law. In fact, Kiousenterlis specifically used the term "citation inaccuracies" and "alleged" when referring to the accusations and requested to either withdraw its original opposition and permit another attorney in the defendant's firm to submit new papers or, in the alternative, to permit the defendant to withdraw "all references to the alleged improperly cited case law." (Id. 32). At the hearing, when questioned about her use of AI, Kiousenterlis stated that "when it was brought to our attention from plaintiff's counsel, that's when I had learned of the AI-generated cases through Westlaw's brief." (Hrg Tr 47:12-15) Yet still she did not admit that in her letter.
Additionally, Fleming conceded that, upon learning of these allegations of frivolous and unethical conduct he and another senior member of the MMPS firm revised Kiousenterlis' response letter (NYSCEF 32). (Tr 15-16). In such letter to the Court, and although not granted permission to file a sur-reply and in violation of Part 29 Court Rules, Kiousenterlis also inappropriately advanced further positions in further support of her opposition to plaintiff's motion, all done with the oversight of her supervising attorney, Fleming, and another senior member of the MMPS firm (Id.).
22 NYCRR §130-1.1(c) states:
In determining whether the conduct undertaken was frivolous, the court shall consider, among other issues the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, should have been apparent, or was brought to the attention of counsel or the party.With respect to the issue of plagiarism, Formal Opinion 2018-3, supra at 15, provides that "[b]y omitting quotation marks, the lawyer is adopting the prior source's words together with the prior source's mistakes. See Scott Moise, Rocket Docket: The Joys and Perils of Online Court Documents, 22 S.C. Law. 46, 47 (May 2011) ('[t]he briefs may look good and read well, but they may not be substantively correct. For example, the cases cited in the briefs could have been misquoted, mischaracterized, or even overturned.')", or as in the instant case, contain nonexistent cases, quotations and unsupported propositions of law.
Accordingly, the Court determines that the conduct of Kiousenterlis, Fleming, and MMPS was frivolous pursuant to 22 NYCRR § 130-1.1 and violated Rule 3.3 in that they failed to promptly correct their misstatements of fact and law. They also violated Rule 3.3 by plagiarizing without verifying citations, quotations and propositions of law from another's brief and thereby "adopt[ed] the prior source's words together with the prior source's mistakes" Formal Opinion 2018-3, supra at 15.
G. Lawyer's Duty of Supervision, Rule 5.1
Rule 5.1 states that a "law firm shall make reasonable efforts to ensure that all lawyers in the firm conform to" the Rules of Professional Conduct and that a "lawyer with management responsibility in a law firm shall make reasonable efforts to ensure that other lawyers in the law firm conform to these Rules." Additionally, Rule 5.1 provides that a "lawyer with direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the supervised lawyer conforms to these Rules" and that a
law firm shall ensure that the work of partners and associates is adequately supervised, as appropriate. A lawyer with direct supervisory authority over another lawyer shall adequately supervise the work of the other lawyer, as appropriate. In either case, the degree of supervision required is that which is reasonable under the circumstances, taking into account factors such as the experience of the person whose work is being supervised, the amount of work involved in a particular matter, and the likelihood that ethical problems might arise in the course of working on the matter.Further, Rule 5.1 states that a
lawyer shall be responsible for a violation of these Rules by another lawyer if: (1) the lawyer orders or directs the specific conduct or, with knowledge of the specific conduct, [*10]ratifies it; or (2) the lawyer is a partner in a law firm or is a lawyer who individually or together with other lawyers possesses comparable managerial responsibility in a law firm in which the other lawyer practices or is a lawyer who has supervisory authority over the other lawyer; and (i) knows of such conduct at a time when it could be prevented or its consequences avoided or mitigated but fails to take reasonable remedial action; or (ii) in the exercise of reasonable management or supervisory authority should have known of the conduct so that reasonable remedial action could have been taken at a time when the consequences of the conduct could have been avoided or mitigated.Here, there are two types of conduct that violate a lawyer's duty of supervision. First, the Court considers whether the supervising attorney, Fleming, and MMPS adequately supervised Kiousenterlis, especially in light of Kiousenterlis' submission of opposition containing nonexistent decisions, nonexistent quotations, and propositions of law that are not supported by cases cited. Given that Kiousenterlis' supervising attorney, Fleming, did not "really know how to use any AI stuff" and therefore could not adequately supervise Kiousenterlis' use of the AI-enhanced Westlaw tool that MMPS had recently acquired, the Court is persuaded that both Fleming and MMPS violated Rule 5.1 Second, when Kiousenterlis' conduct was challenged by opposing counsel, she was not candid with this Court in the November 25, 2025 letter in which Kiousenterlis responded to plaintiff's accusations of plagiarism and misuse of AI. Such letter was revised with the input of Kiousenterlis' supervising attorney, Fleming, and a senior member of the firm of MMPS before being submitted to the Court. The letter contained only insignificant mitigation and remedial action which was insufficient to minimize wasted judicial resources, the resources of counsel and expense to the litigants. Accordingly, the Court is convinced that such conduct by both Fleming and MMPS violated Rule 5.1. "[S]upervision is a duty, not a courtesy" and "firm leaders remain guardians of their name and their firm's reputation on every pleading." Mattox, at *8.
IV. EVALUATION OF APPROPRIATE SANCTIONS
In learning of the alleged frivolous, unethical and sanctionable conduct of filing an opposition paper containing nonexistent decisions, nonexistent quotations, and propositions of law that are not supported by cases cited and plagairism, and after reviewing same, this Court was constrained to issue a Show Cause Order regarding such conduct. The Court in Ader recognized that "22 NYCRR § 100.3(D)(2) provides that '[a] judge who receives information indicating a substantial likelihood that a lawyer has committed a substantial violation of the Rules of Professional Conduct (22 NYCRR Part 1200) shall take appropriate action.'" Id. at *3 Additionally, 22 NYCRR § 130-1.1 states that a court may issue sanctions for frivolous conduct. And, the Court in United States v. McGee, 2025 WL 2888065 [D.C. S.D. Ala. S. Div. Oct. 10, 2025] succinctly and significantly stated that:
[t]he Court notes that errors can happen in filings despite attorneys' (and even judges') best efforts. Yet the insertion of bogus citations is not a mere typographical error, nor the subject of reasonable debate. It is just wrong. There has been a plethora of general warnings from courts, bar associations, and the legal community at large about the risks of bogus citations generated by AI. Id. at *7.The Court also considers that "any sanction imposed must be proportionate to the offense and commensurate with principles of restraint and dignity inherent in judicial power. This last principle includes a responsibility to consider the usefulness of more moderate penalties before imposing a monetary sanction." Zambrano v City of Tustin, 885 F. 2d 1473, 1480 [9th Cir. Sept. 21, 1989]. Additionally, this Court is particularly mindful that "[s]anctions under 22 NYCRR § 130-1.1 serve two purposes; 1) punishment for past conduct; and 2) to deter future conduct by the parties or the Bar at large. (citations omitted)" Idehen, at *8.
1. CONSIDERATION OF APOLOGIES OF KIOUSENTERLIS AND FLEMING
Although Kiousenterlis was apologetic in her less than candid November 25, 2025 letter to the Court (NYSCEF 32), and both Kiousenterlis and Fleming expressed sincere apologies to the Court and their adversary during the hearing, this Court draws guidance from the jurisprudence of other courts:
Even in cases like this one, where lawyers who cite AI hallucinations accept responsibility and apologize profusely, much damage is done. The opposing party expends resources identifying and exposing the fabrication; the court spends time reviewing materials, holding hearings, deliberating about sanctions, and explaining its ruling; the substance of the case is delayed; and public confidence about the trustworthiness of legal proceedings may be diminished. McGee, 2025 WL 2888065 at *6, (citing Johnson v. Dunn, 792 F. Supp. 3d 1241 [2025] 2025 WL 2086116 at *11).Accordingly, this Court has considered the apologies proffered by Kiousenterlis and Fleming, and finds that "regret and apologies are not necessarily enough to avoid the imposition of sanctions for the submission of non-existent legal authority. See Dehghani, 2025 WL 988009, at *5 ('While the Court acknowledges that [counsel] was sincerely apologetic for his failure to ensure cases cited in his brief existed and for the extra work this has caused the Court, he has nonetheless failed to adhere to his obligations under [ethical rules])'" Benjamin, 779 F. Supp. 3d 341. 350 [2025].
2. CONSIDERATION OF A "REDO"
Turning to defendant's request for a "redo," as noted in Ader:
'[T]he court rejects the invitation to consider that actual authorities stand for the proposition that bogus authorities were offered to support' (Johnson v Dunn, 2025 WL 2086116, at *16 [ND Ala, July 23, 2025, 2:21-CV-1701-AMM]). Use of fake citations and quotations that may generally support "real" statements of law is no less frivolous. Indeed, when a fake case is used to support an uncontroversial statement of law, opposing counsel and courts—which rely on the candor and veracity of counsel—in many instances would have no reason to doubt that the case exists. Ader, at *1And as stated by the Court in Grymes Dev. Co.:
The Court cannot turn its back on what occurred here by simply allowing the motion to be withdrawn without prejudice. Such a response would leave opposing counsel without a remedy for their wasted time and leave clients, courts, and other practitioners that much [*11]more exposed to similar conduct in the future. Id. at *4.Further, the courts have a job to do - adjudicate and resolve the matters before them fairly and efficiently. When papers filed with the court contain substantial errors that divert the court away from its core business, it compromises the court's ability to perform its judicial function. "Thus, a court has inherent power to take those reasonable and necessary steps deemed appropriate to enable it to perform efficiently the judicial function for which it has been constituted, that it protects its dignity and integrity, including, to be certain, giving force and effect to its lawful actions." People v Green, 170 Misc 2d 519, 523 [Sup Ct Bronx County Nov. 1, 1996]
Accordingly, this Court rejects the defendant's request for a "redo."
3. CONSIDERATION OF KIOUSENTERLIS' INEXPERIENCE AS AN ATTORNEY
Kiousenterlis graduated law school in May 2023, began working at MMPS in September 2023, was admitted to the bar in September 2024, and voluntarily left MMPS November 26, 2025.
The Court has considered the lack of experience of the fairly newly admitted attorney Kiousenterlis and looks for guidance to the case of Wadsworth v. Walmart Inc., 348 F.R.D. 489 [D. Wyo. February 24, 2025], which stated in pertinent part:
Nevertheless, no inquiry cannot be deemed objectively reasonable even if the reliance is placed in an experienced attorney. See IBT Emp. Grp. Welfare Fund v. Compass Mins. Int'l, Inc., 723 F. Supp. 3d 1053, 1061 (D. Kan. 2024) Every attorney learned in their first-year contracts class that the failure to read a contract does not escape a signor of their contractual obligations. See generally 27 Williston on Contracts § 70:114 (4th ed. 2009 & Supp. 2024). Similarly, one who signs a motion or filing and fails to reasonably inspect the law cited therein violates [ethical rules]. Wadsworth, 348 F.R.D. at 496.Accordingly, given all of the above, this Court can consider but cannot and does not excuse the lack of experience of Kiousenterlis when determining sanctions.
4. CONSIDERATION OF SANCTIONS IMPOSED BY OTHER COURTS
Further, this Court has considered sanctions imposed by other courts throughout New York State and the country for similar misconduct. Such sanctions include monetary sanctions, reasonable attorney's fees, costs and expenses, striking the offending filing, issuing an admonition, reprimand, or censure, referring attorney to disciplinary bodies, revoking the pro hac vice admission of attorney, directing the Clerk of Court to serve a copy of the sanctions order on all other judges in the jurisdiction, directing the attorney to file, not under seal, a copy of the sanctions order in any case wheren the attorney appeared as counsel and final judgment has not been rendered, directing the attorney to file, not under seal, a copy of the sanctions order in any case wherein the attorney appears as counsel for twelve (12) months after the date of such order, requiring the attorney to mail letters to each judge falsely identified as the author of nonexistent opinions, and ordering the attorney to attend CLE trainings regarding the use of Artificial Intelligence. Two cases provide specific detail regarding the imposition of sanctions by [*12]other courts: Hayes, at 1071-1072, and Mattox, at *6-7. Additionally, this Court has considered how other state and federal courts in New York State, as well as other state and federal courts around the country have evaluated similar conduct, mitigating and aggravating factors, and what sanctions were imposed. Attached as Exhibit A is a chart describing each of the cases read and thoroughly reviewed by this Court setting forth those relevant key considerations.[FN2]
Such attached 12 page chart is hereby incorporated by reference herein as if fully set forth verbatim in this Decision, Order and Judgment.
Additionally, in determining how to evaluate appropriate sanctions in the instant matter for the frivolous and unethical conduct as detailed herein, this Court is provided further guidance by the Court in Mattox which identifies three core factors to be considered:
1. Verification and Inquiry — Whether counsel conducted a reasonable, human-based verification of every cited authority before filing. A reasonable inquiry requires more than reliance on an automated tool; it demands independent confirmation through recognized primary legal sources. The signature of an attorney certifies human diligence, not mechanical output.2. Candor and Correction — Whether counsel promptly disclosed the use of AI and corrected the record once inaccuracies were discovered. Candor after filing weighs heavily in mitigation; concealment or minimization aggravates the violation. The duty of candor extends beyond the moment of signature, it continues for as long as the filing remains before the Court.3. Accountability and Supervision — Whether supervising or associated attorneys exercised oversight consistent with Model Rules 5.1 and 5.3 [NY ST RPC Rule 5.1 and 5.3] and whether firm-level safeguards existed to prevent recurrence. The inquiry extends beyond the drafter to the institutional culture that permitted unverified authority to reach the docket. A firm's silence or absence of policy does not immunize it; it implicates it. Mattox, at *5.Here, with respect to factor 1, this Court finds that Kiousenterlis did not conduct a reasonable, human-based verification of every cited authority befire filing her opposition.
With respect to factor 2, as detailed above, the Court finds that Kiousenterlis, Fleming, [*13]and MMPS all failed to promptly correct the record once inaccuracies were discovered.
With respect to factor 3, prior to the hearing, and as detailed above, the Court finds that the supervising attorney and MMPS failed in their oversight consistent with Rule 5.1, and they had insufficient firm-level safeguards to avoid recurrence. Fleming, the supervising attorney for Kiousenterlis and the attorney representing the firm MMPS, stated that "MMPS conducted additional firm-wide training on the importance of complying with our handbook provisions regarding the use of AI" (NYSCEF 38). However, the AI provisions of the handbook do not address the conduct claimed by Kiousenterlis in the instant case - that Kiousenterlis did not use AI but copied and pasted without verifying from someone else's brief that allegedly used AI. When the Court questioned Fleming that if in fact Kiousenterlis did not use AI as she claimed, and the firm is not also training people not to copy and paste a brief that used AI, could that be a hole in their policy. He candidly admitted that was a possibility. Fleming also stated that after this he will ensure that the firm's attorneys "are not simply plagiarizing briefs or simply cutting and pasting from briefs" as well. The Court takes this into consideration.
E. IMPOSITION OF SANCTIONS
No court ever aspires to issue sanctions against its fellow members of the bar, or prepare for and conduct a sanctions hearing which diverts the court away from its regular course of business—its main objective of adjudicating and resolving matters before it efficiently, promptly, and fairly. This Court verily believes that the best method to avoid committing sanctionable unprofessional conduct is through education. Nevertheless, when a court is confronted with improper conduct that rises to the level that it interferes with the administration of justice, as here, it is the responsibility and duty of the court to take appropriate action.
Now upon a hearing being held and each party subject to sanctions having had a full and complete opportunity to be heard, the Court must take appropriate action. In the instant matter and considering everything set forth herein, this Court does not believe that appropriate action includes referring counsel to the Grievance/Disciplinary Committee. Additionally, although not directing Attorney Maria-Eleni Kiousenterlis, Esq., Attorney Thomas M. Fleming, II, Esq. or members of the Law Office of Milber Makris Plousadis & Seiden, LLP to educate themselves on the use of Generative Artificial Intelligence,[FN3]
this Court is highly recommending they take CLE courses on the subject so that they do not find themselves in a similar situation in the future wherein the sanctions may not be as lenient.
In applying the Mattox principles of the three core factors to the instant case as discussed herein, and while considering the attorneys' ethical duties and violations thereof and their frivolous conduct as specified herein, both the mitigating and aggravating factors as discussed above, and upon all the foregoing, and this Court's inherent power, this Court determines sanctions as follows, and it is hereby
ORDERED and ADJUDGED that the Opposition filed on November 17, 2025 (NYSCEF 17, 22) is Stricken and the Clerk of the Court is directed to mark the file [*14]accordingly; and it is furtherORDERED that Attorney Maria-Eleni Kiousenterlis, Esq. is directed to file a copy of this Decision, Order and Judgment After Sanctions Hearing upon the Clerk of the Court within five (5) business days of the date of this Order and file the Affidavit of Service to NYSCEF within ten (10) business days and pay any required fees to effectuate the above; and it is furtherORDERED and ADJUDGED that Attorney Maria-Eleni Kiousenterlis, Esq. shall pay a $1,000.00 fine payable to the Lawyer's Fund for Client Protection, 119 Washington Avenue, Albany, New York 12210, within ten (10) business days of the date of this Order and file proof of payment to NYSCEF within fifteen (15) days; and it is furtherORDERED that Attorney Maria-Eleni Kiousenterlis, Esq. shall serve a copy of this Decision, Order and Judgment After Sanctions Hearing upon the Lawyer's Fund for Client Protection, 119 Washington Avenue, Albany, New York 12210, within five (5) business days of the date of this Order and file the Affidavit of Service to NYSCEF within ten (10) business days; and it is furtherORDERED and ADJUDGED that Attorney Thomas M. Fleming, II, Esq., shall pay a $1,000.00 fine payable to the Lawyer's Fund for Client Protection, 119 Washington Avenue, Albany, New York 12210, within ten (10) business days of the date of this Order and file proof of payment to NYSCEF within fifteen (15) days; and it is furtherORDERED that Attorney Thomas M. Fleming, II, Esq. shall serve a copy of this Decision, Order and Judgment After Sanctions Hearing upon the Lawyer's Fund for Client Protection, 119 Washington Avenue, Albany, New York 12210, within five (5) business days of the date of this Order and file the Affidavit of Service to NYSCEF within ten (10) business days; and it is furtherORDERED and ADJUDGED that the Law Office of Milber Makris Plousadis & Seiden, LLP shall pay reasonable attorneys' fees, costs, and expenses in the amount of $8,000.00 payable to the attorneys for plaintiff, Ruskin Moscou Faltischek, P.C., within ten (10) business days of the date of this Order and file proof of payment to NYSCEF within fifteen (15) days; and it is furtherORDERED and ADJUDGED that the Law Office of Milber Makris Plousadis & Seiden, LLP shall serve a copy of this Decision, Order and Judgment After Sanctions Hearing upon their client, the defendant, within five (5) business days of the date of this Order and file the Affidavit of Service to NYSCEF within ten (10) business days.Dated: 1.27.26Linda Kevins, JSC[*15]EXHIBIT A

 SANCTIONS CHART FOR AI HALLUCINATION CASES
NY State Court Cases:                                                                                                 Linda Kevins, JSC and Thomas Marino, Esq.

Citation: (NY Format)
 

Court: S= State F= Fed

P= Pro se A=Atty

Conduct:

Court Considered: Bold Indicates Rule Applied. + = Mitigating Factor - = Aggravating Factor • = Other Considerations X = Does Not Apply
 

Sanction(s) Imposed:

Deutsche Bank Natl. Tr. Co. v LeTennier, 2026 NY Slip Op 00040 [3d Dept Jan. 8, 2026]

S NY (AD)

A & P

• Non-Existent/Erroneous Cases Totaled 23, Numerous Filings • Unsupported Legal Propositions

22 NYCRR 130-1.1(c) NY RPC 3.3 - No Prompt Admission or Remedial Measure when Alerted - After Alerted, Continued & Added More Hallucinations - Not Candid w/ Court

• $7,500 Fine, Atty • $2,500 Fine, Pro Se

Matter of Matos, 245 NYS3d 42 [1st Dept 2025]

S NY (AD)

A

• Non-Existent/Erroneous Cases • Erroneous Quotations • Unsupported Legal Propositions

1st Finding in Foreign Jurisdiction, 2d Finding based upon Reciprocal Discipline Initiated by NY Grievance Comm. to NY 1st Dept. (Here) USPTO RPC Similar to: NY RPC 1.1, 1.3, 8.4 1st + Admitted AI Use for Learning + Admitted Did Not Verify Cites - Denied AI Use for Cites 2d + Completed CLE

1st • Public Reprimand • CLE 2d • Public Censure

Grymes Dev. Co. v Fodera, 2025 NY Slip Op 25245 [Sup Ct Nov. 10, 2025]

S NY

A

• Non-Existent/Erroneous Case • Erroneous Quotations

22 NYCRR 130-1.1(c) NY RPC 3.3 + Prompt Admission When Alerted by Adversary in their Opp + Apology • Sought to Withdraw Papers w/o Prejudice, Adversary Objected

• $2,000 Fine • $11,718.50 & $5,275 in Atty Fees • Motion Denied w/ Prejudice

Augustin v Formula 3 Brooklyn Inc., 244 NYS3d 464 [Sup Ct 2025] 

S NY

P

• Non-Existent/Erroneous Cases

- Court Previously Warned Pro Ses re AI Use

• No Sanction Imposed But Based on All Submissions - Motion Denied

NewRez LLC v Morton, 242 AD3d 416 [1st Dept 2025]

S NY

P

• 4 Non-Existent/Erroneous Cases

+ Court Lenient to Pro Se

• No Sanctions Imposed

Ader v Ader, 87 Misc 3d 1213(A) [Sup Ct 2025] 

S NY

A

(1st Filing) • Non-Existent/Erroneous Cases • Erroneous Quotations (2nd Filing) • Non-Existent/Erroneous Cases • Erroneous Quotations • Unsupported Legal Propositions

22 NYCRR 130-1.1(c) NY RPC 3.3 - No Prompt Admission or Remedial Measure when Alerted - When Alerted, Continued and Added More Hallucinations - Not Candid w/ Court - Made Misrepresentations to Court

• Atty Fees • Atty Referred to Disciplinary Bodies in 2 States

Idehen v Stoute-Philli p, 86 Misc 3d 1244(A) [Civ Ct 2025] 

S NY

A

• 7 Non-Existent/Erroneous Cases • Unsupported Legal Propositions

22 NYCRR 130-1.1(c) (Looked to Rule 11) - Blamed Health - Not Candid w/ Court - Atty States Used "Westlaw Supported by Google Co-Pilot" (Co-Pilot is Microsoft NOT Google) - First, Claimed System Affected by Malware - Wanted to Call Expert. Then, After Recess, Retreated to Original Position of Co-Pilot

• $1,000 Fine • Atty Referred to Disciplinary Bodies in 3 Dists. • Serve Client Order

Will of Samuel, 82 Misc 3d 616 [Sur Ct 2024]

S NY

A

• 5 Non-Existent/Erroneous Cases • Unsupported Legal Propositions

22 NYCRR 130-1.1(c) • No Admission When Alerted

• Struck Filed Papers • Scheduled Sanctions Hearing

[*16]Other State Court Cases:

Citation: (NY Format)

Court: S= State F= Fed

P= Pro Se A= Atty

Conduct:

Court Considered: Bold Indicates Rule Applied. 
+ = Mitigating Factor - = Aggravating Factor • = Other Considerations X = Does Not Apply

Sanction(s) Imposed:

Mezu v Mezu, 267 Md App 354, 346 A3d 181 [Md Ct Spec App 2025], reconsideration denied (Nov. 24, 2025)

S MD (AD)

A

•Non-Lawyer Law Clerk for Atty Used ChatGPT, Google, VLex, Court Listener, CaseMine & Justia • Non-Existent/Erroneous Cases • Erroneous Quotations • Unsupported Legal Propositions

Rule 11 similar to MD RPC 1-311 MD RPC 19-303.1, MD RPC 19-305.3 • Atty Delegated Work & Verifying to Non-Lawyer • Law Clerk Law Clerk Did Not Understand Using Systems = AI Use - Atty Admits that Typically Does Not Read Cases Cited to Court - Atty Does Not Understand or Use AI + Atty & Law Clerk Did CLE + Atty Accepted Responsibility + Atty Admitted Did Not Verify + Atty Implemented Remedial Measures of Protocols for Verification

• Atty Referred to Disciplinary Body • No Leave to Re-File

Noland v Land of the Free, L.P., 114 Cal App 5th 426, 336 Cal Rptr 3d 897 [Cal Ct App 2025]

S CA

A

•Used ChatGPT, Claude, Gemini, & Grok • Non-Existent/Erroneous Cases • Erroneous Quotations • Unsupported Legal Propositions

CA RPC • Adversary Did Not Alert Court or File Aff of Services = No Fee + Admitted AI Use & Not Verified - Requested to Revise "Citation Irregularities"

• $10,000 Fine • Order Sent to Disciplinary Body • Serve Client Order • Decline to Permit Revised Papers

Garner v Kadince, Inc., 2025 UT App 80, 571 P3d 812

S UT

A

• Non-Lawyer Law Clerk for Atty Used ChatGPT • Non-Existent/Erroneous Cases • Unsupported Legal Propositions

Rule 40 of AP - UT + Accepted Responsibility + Atty Admission of AI Use & Not Verifying + Initiated AI Policy After OTSC + Offered to Pay Atty Fees of Adversary

• Atty Fees • Refund Their Client • $1,000 Fine

Smith v Farwell [Mass Super, Norfolk County 2024]

S MS

A

•Interns Drafted Papers • After Further Review Court Discovered 2 Opp Papers Containing 3 Non-Existent/Erroneous Cases

MA R. Civ. P. 11 and 7 - Blame Shifting to Unknown AI System - Unfamiliar w/ AI systems + Admitted to AI Use & Not Verifying + Remedial Action of Subscribing to LEXIS + Apology + Filed Amended Papers w/o Non-Existent/Erroneous Cases

• $2,000 Fine

Ex parte Lee, 673 SW3d 755 [Tex App 2023]

S TC

A

Criminal case • 3 Non-Existent/Erroneous Cases • Erroneous Quotations • Unsupported Legal Propositions

- When Alerted, Pro Se Neither Contested Nor Corrected Deficiencies

• Application Denied, Papers Insufficient • No OTSC • No Sanctions

Scott v Fed. Nat. Mortg. Ass'n [Me Super, Cumberland County 2023], affd sub nom. Scott v Fed. Natl. Mtge. Assn. [Me Apr. 23, 2024]

S ME

P

• Non-Existent/Erroneous Cases • Erroneous Quotations

Rule 11

• Atty Fees

Federal Court Cases:

Citation: (NY Format)

Court: S=State F= Fed

P= Pro se A= Atty

Conduct:

Court Considered: Bold Indicates Rule Applied + = Mitigating Factor - = Aggravating Factor • = Other Considerations X = does not apply

Sanction(s) Imposed:

Gardner v Combs, 2:24-CV-077 29, 2025 WL 3632704 [DNJ Dec. 15, 2025]

F NJ

A

Non-Existent/Erroneous Cases • Unsupported Legal Propositions

Rule 11 - No Remedial Action After Alerted - Court Inquired re: Non-Existent Case - Still No Response so Court Issued OTSC - Only After OTSc, Atty Admitted AI Use & No Verification - Not Candid w/ Court

• $6,000 Fine • Atty to Seek Help from Licensing Entities in 2 States • Atty to Self-Report to Disciplinary Bodies in 2 States • Serve Client Order & Transcript of OTSC Hearing

Cojom v Roblen, LLC, 3:23-CV-166 9 (JCH), 2025 WL 3205930 [D Conn Nov. 17, 2025]

F CT

A

• Non-Existent/Erroneous • Cases Erroneous Quotations

Rule 11 - Adversary was Pro Se + Atty Took Remedial Actions: + Atty Cancelled AI Tool Subscription + Resolved for Self & Staff to Never Use AI Again + CLE + Prompt Admission + Appreciated Gravity of Conduct

• $500 Fine

Mattox v Prod. Innovations Research, LLC, 6:24-CV-235-JAR, 2025 WL 3012828 [ED Okla Oct. 22, 2025]

F OK

A

• Used ChatGPT • 11 Pleadings Contained Unverified: • Non-Existent/Erroneous Cases • Erroneous Quotations Unsupported Legal Propositions (Total 31)

Rule 11 - Tardy Admission - No Remedial Action - Failed to Withdraw or Correct Filings - Failed to Appear for 1st Hearing & 2d Hearing Held for Non-Appearing Attys + Eventual Admissions + Accepted Responsibility

• $23,423.90 b/w 2 firms in Attys Fees • $1,000 Fine, Counsel of Record & Managing Partner • $2,000 Fine, Referring Atty of Record (Did Not Draft or Sign) • $3,000 Fine, Drafting Atty • Public Reprimands • Struck All Filings containing Inaccurate Cites • Suspended from Serving as Sponsor for Pro Hoc Vice Atty for 12 mos.

United States v McGee, 1:24-CR-112-TFM, 2025 WL 2888065 [SD Ala Oct. 10, 2025]

F AL

A

Criminal Case • Used Ghost Writer Legal (Word Plug-in Using ChatGPT) • Non-Existent/Erroneous Cases • Erroneous Quotations • Unsupported Legal Propositions

Inherent Authority X Rule 11 X AL RPC 3.3 + Apology - Did Not Appreciate Gravity of Conduct - Denied Use of ChatGPT - Client (Defendant) requests New Counsel at Hearing - Tardy Admission & Failed to Withdraw or Correct Filings • Court Finds Egregious Misconduct b/c Complex Criminal Trial Req'd Postponed for New Counsel

• Public Reprimands • Order Submitted for Publication Referral to CJA Panel for Possible Removal • $5,000 Fine • File Order in All Courts Atty Appeared as Counsel & Final Judgment Not Rendered • File Order in All Courts Atty Appears as Counsel, for 12 mos After Order • Provide Order to All Jurisdictions Atty Licensed to Practice Law • Order Sent to Discipline Body • Serve Order to Chief Judges of 2 State Districts

OTG New York, Inc. v OTTOGI Am., Inc., 24-CV-07209 (BRM) (JRA), 2025 WL 2671460 [DNJ Sept. 18, 2025]

F NJ

A

• Cited Non-Existent Cases • Erroneous Quotations • Unsupported Legal Propositions

Rule 11 + Prompt Admission of AI Use & Not Verified + Candid w/ Court + Apology + Willingness to Immediately Implement AI Safeguards

• $3,000 Fine • Struck Reply • Self Report to Disciplinary Body • Serve Client Order

In re Richburg, 671 BR 918 [Bankr DSC 2025]

F CA

A

• Used Microsoft Co-Pilot • Non-Existent/Erroneous Cases • Unsupported Legal Propositions

Rule 11 similar to Fed. R. Bankr. P. Rule 9011 + Admitted AI Use & Not Verified + Apology + Remedial Action of Subscribing to LEXIS or WestLaw • After OTSC, Replaced Non-Existent/Erroneous Cases • Voluntary Dismissal Filed

• No Monetary Sanctions • CLE

Hall v Academy Charter School, 2:24-CV-086 30-JMW, 2025 WL 2256653 [EDNY Aug. 7, 2025] 

F NY

A

• Non-Existent/Erroneous Cases • Unsupported Legal Propositions

Rule 11 NY RPC 1.1, 3.3 + Prompt Admission of AI Use + Accepted Responsibility Attys's Sudden Death of Spouse - Blamed Clerk for Use of Google + Atty took Bereavement Leave & Seeking Medical & Mental Help + Stipulated to Relief Sought by Adversary

• No Monetary Sanctions • Admonished • Serve Client Order

Johnson v Dunn, 792 F Supp 3d 1241 [ND Ala 2025]

F AL

A

• 2 Filings • 3 Non-Existent/Erroneous Cases • 2 Unsupported Legal Propositions

Inherent Authority X Rule 11 • Bad Faith Drafting Atty & Attys of Record + Non-Drafting Atty Released + Non-Drafting Atty w/o Supervisory Role Released + Firm had AI Policy and Committee + Was Supplementing AI Policy + After OTSC, Sent Reminder to Firm Re: Ethical Duties & Verification of All Cites & Authorities Filed w/ Court + Firm To Do Additional AI Training w/ Updated AI Policies + Firm Doubled Down on Remedial Measures

5 Attys Total 2 Released w/o Sanction • Public Reprimand for 3 Attys • Order Submitted for Publication • Disqualification of 3 Attys from Case • 3 Attys Referred to Disciplinary Body & Licensing Entities • Serve Clerk w/ Listing of Jurisdictions 3 Attys Licensed • Serve Client Order S• erve Order on Every Atty in Firm, Opposing Counsel & Presiding Judges in All Pending State & Federal Case Attys are Counsel of Record

Kaur v Desso, 9:25-CV-726 (AMN), 2025 WL 1895859 [NDNY July 9, 2025]

F NY

A

• Used Claude Sonnet 4 • Erroneous Quotations

Rule 11 - No Prompt Admission - No Remedial Measure when Alerted - After OTSC, Admitted to AI Use - Blamed Health + After OTSC, + Sought to w/d Filing + Noticed Client + Enrolled in CLE • Subjective Bad Faith Found (R11)

• $1,000 Fine • CLE • Serve Client Order

Ramirez v Humala, 24-CV-242 (RPK) (JAM), 2025 WL 1384161 [EDNY May 13, 2025]

F NY

A

• Non-Existent/Erroneous Cases

Rule 11 Inherent authority • Bad Faith Found + Prompt Admission of AI Use & Not Verifying + Apologies + Remedial Measure of Internal Protocols

• $1,000 Fine, Jointly b/w Atty & Firm • Serve Client Order

Lacey v State Farm Gen. Ins. Co., CV 24-5205 FMO (MAAX), 2025 WL 1363069 [CD Cal May 5, 2025]

F CA

A

• Non-Existent/Erroneous Cases • Erroneous Quotations

Rule 11 and 37 Inherent Authority • Bad Faith Found - No Prompt Admission of AI Use - No Prompt Admission of Not Verifying - Court Alerted Atty of 2 Non-Existent/Erroneous Cases, Atty Revised Papers w/o the 2, & Stated All Other Cases were Verified in Revised Papers - But Revised Papers had MORE Non-Existent/Erroneous Cases. • Court Found Revised Egregious + Apology + Late Admission + Disclosed to Client

• Struck Filed Papers • $31,100 Atty Fees

Benjamin v Costco Wholesale Corp., 779 F Supp 3d 341 [EDNY 2025]

F NY

A

• Used ChatOn.AI • 5 Non-Existent/Erroneous Cases • Unsupported Legal Propositions

Rule 11 • Bad Faith Found - Atty Signed off on Paralegal Work w/o Verifying + Apology + Candid w/ Court + CLE

• $1,000 Fine • Serve Client Order

Bevins v Colgate-Palm olive Co., CV 25-576, 2025 WL 1085695 [ED Pa Apr. 10, 2025]

F PA

A

• Non-Existent/Erroneous Cases • Unsupported Legal Propositions

Rule 11 - Not Candid w/ Court - Court Issued OTSC Alerting Atty of Non-Existent/Erroneous Cases & Atty Ordered to Provide Affidavit & Copies of Cases, Atty did neither but Filed Memo of Law & Explanations were Not Persuasive + Late Admission of Not Verifying

• Struck Filed Papers (Complaint Dismissed) • Atty Referred to Disciplinary Bodies • Serve Client Order

 Dehghani v Castro, 2:25-CV-005 2 MIS-DLM, 2025 WL 988009 [DNM Apr. 2, 2025], affd, 782 F Supp 3d 1051 [DNM 2025]
 

F NM

A

• Non-Existent/Erroneous Cases • Erroneous Quotations • Unsupported Legal Propositions

Rule 11 - Court Issued OTSC Alerting Atty of Non-Existent/Erroneous Cases & Atty Ordered to Provide Copies of Cases or Appear for Hearing + Prompt Admission of No Verifying - Blamed LAWCLERK • Atty Paid Company (LAWCLERK) to Draft Brief + Atty Took Remedial Steps Filing Amended Response & Providing More Info about Erroneous Cites Not Alerted To

&bull$1,500 Fine to Signing Atty • CLE for Signing Atty • Self Report to Disciplinary Body, Signing Atty • Signing Atty Ordered to Report Drafting Atty to Disciplinary Body • Serve Order to LAWCLERK, Drafting Atty, Their Supervisor & Email Order to LAWCLERK

Sanders v United States, 176 Fed Cl 163 [Fed Cl 2025]

F CL

P

• Non-Existent/Erroneous Cases

Rule 11

• No Sanctions • Warning that Any Filings w/ Non-Existent Cases can Result in Sanctions, Striking of Filings, Filing Restrictions, Monetary Penalties, Or Dismissal

Kruglyak v Home Depot U.S.A., Inc., 774 F Supp 3d 767 [WD Va 2025]

F VA

P

• Non-Existent/Erroneous Cases

Rule 11 + Prompt Admission of AI Use + Pro Se Obtained Access to Credible Sources + No Bad Faith Found

• No Monetary Sanctions • Warning • Denied Request to Amend Pleading

Bunce v Visual Tech. Innovations, Inc., CV 23-1740, 2025 WL 662398 [ED Pa Feb. 27, 2025]

F PA

A

• Used ChatGPT for 2 Motions • Non-Existent/Erroneous Cases • Unsupported Legal Propositions

Rule 11 • Atty Alerted by OTSC + Prompt Admission of AI Use + Admitted Not Verifying

• $2,500 Fine • CLE

Wadsworth v Walmart Inc., 348 FRD 489 [D Wyo 2025]

F WY

A

• In-house Database • 8 Non-Existent/Erroneous Cases

Rule 11 + Implemented Policies & Safeguard Trainings re: AI + Apology + Prompt Withdrawal of Papers + Admitted AI Use + Paid Fees of Adversary

• Revoke Pro Hac Vice Admission • $3,000 Fine, Drafting Atty • $1,000 Fine, Signed Atty • $1,000 Fine, Sponsoring Atty for Pro Hac Vice

Mid Cent. Operating Engineers Health and Welfare Fund v HoosierVac LLC, 2:24-CV-003 26-JPH-MJD, 2025 WL 574234 [SD Ind Feb. 21, 2025], report and recommendat ion adopted as mod, 2:24-CV-003 26-JPH-MJD, 2025 WL 1511211 [SD Ind May 28, 2025]

F IN

A

• Non-Existent/Erroneous Cases

Rule 11 IA RPC 1.1, 3.1, 3.3 - After Court Alerted Atty, Atty Withdrew Cite Claiming "Error" - No Prompt Admission of AI Use - Court Reviewed Other Faulty Filings & Issued OTSC to Address - Admits AI Use After OTSC Issued + Volunteered for CLE

• $15,000 Fine ($5,000 for Each Brief w/ Non-Existent/Erroneous Cases) • Atty Referred to Disciplinary Body • Serve Client Order

United States v Hayes, 763 F Supp 3d 1054 [ED Cal 2025], recons ideration denied, 2:24-CR-0280-DJ C, 2025 WL 1067323 [ED Cal Apr. 9, 2025]

F CA

A

• Erroneous Citation and Quotations • Unsupported Legal Propositions

Local Rule 108 CA RPC 3.1, 3.3 • Bad Faith Found - Atty Not Candid w/ Court - Denied AI Use Despite Multiple Opportunities - Refused to Admit - Misrepresented Conduct - "Inadvertant Citation Error" - "Clerical Error"

• $1,500 Fine • Atty Referred to Disciplinary 2 Bodies;1 Dist, 1 State • Serve Order to All District & Magistrate Judges in District

Gauthier v Goodyear Tire & Rubber Co., 1:23-CV-281, 2024 WL 4882651 [ED Tex Nov. 25, 2024]

F TX

A

• 2 Non-Existent/Erroneous Cases • Erroneous Quotations • Atty Claims Lexis AI Feature Failed to Flag

Rule 11 Texas Local Rule AT-3 - No Prompt Admission when Alerted Which Cost Adversary $7,521.26 - No Remedial Measure when Alerted - After OTSC, Admits AI Use, + Seeks to Amend to Remove Bad Citations and Quotations (Court Grants)

• $2,000 Fine • CLE • Serve Client Order

Grant v City of Long Beach, 96 F4th 1255 [9th Cir 2024]

F CA (COA)

A

• Non-Existent/Erroneous Cases • Unsupported Legal Propositions

Fed Rule of Appellate Procedure 28 - No Admission

• Struck Brief, Appeal Dismissed

United States v Cohen, 724 F Supp 3d 251 [SDNY 2024]

F NY

A

• 3 Non-Existent/Erroneous Cases

Rule 11 Inherent Authority • No Bad Faith Found

• No Sanctions

Kruse v Karlen, 692 SW3d 43 [Mo Ct App 2024], reh and/or transfer denied (Apr. 9, 2024)

F MO (COA)

P

• 22 Non-Existent/Erroneous Cases • Erroneous Quotations

MO RAP Rule 84.19

• Struck Brief, Appeal Dismissed • $10,000 Fine

Park v Kim, 91 F4th 610 [2d Cir 2024]

F NY (COA)

A

• Used ChatGPT • Non-Existent/Erroneous Cases

Rule 11 NY RPC 3.3 - Not Candid w/ Court

• Atty Referred to Disciplinary • Body Serve Client Order

Thomas v Pangburn, CV423-046, 2023 WL 9425765 [SD Ga Oct. 6, 2023], report and recommendat ion adopted, 4:23-CV-46, 2024 WL 329947 [SD Ga Jan. 29, 2024]

F GA

P

• Non-Existent/Erroneous Cases

Rule 11 - Not Candid w/ Court

• Struck Filed Paper (Pleading) • No Monetary Sanction

Mata v Avianca, Inc., 678 F Supp 3d 443 [SDNY 2023]

F NY

A

• Non-Existent/Erroneous Cases

Rule 11 Inherent Authority • Bad Faith Found - No Prompt Admission when Alerted - No Remedial Measure when Alerted - When Alerted, Used AI to "Verify" Non-Existent/Erroneous Cases Stating Others Could Not Be Found - Not Candid w/ Court - Made Misrepresentations to Court

• $5,000 Fine • Serve Client Order • Serve Order to Judges Referenced in Non-Existent/Erroneous Cases

Footnotes

Footnote 1:The cases cited in italics below (1-6) are all the subject of the allegations regarding unverified caselaw.

Footnote 2:The undersigned is a member of the National Center for State Courts (NCSC) Artificial Intelligence Implementers' Forum and the Thomson Reuters Institute/NCSC Artificial Intelligence Policy Consortium on Law and Courts, Rules and Practices Committee which provide numerous resources to the Bench and Bar at: https://www.thomsonreuters.com/en/institute/ai-in-courts-resource-center. Further, the undersigned, along with Thomas Marino, Esq., are the Co-Founders of the NYS Suffolk County Bar Association Artificial Intelligence Committee and have served as Co-Chairs since its inception in 2023, and have since lectured on the subject of Artificial Intelligence and the Courts both locally and nationally. The graph was composed by the undersigned and Thomas Marino, Esq. as a tool for a CLE to assist members of the bar and the judiciary to avoid the risks of using unverified Generative Artificial Intelligence for research and drafting. This information is also included because it provides helpful resources, proper attribution, and education, which affords a more measured method "to deter future conduct by the parties or the Bar at large." Idehen at *8.

Footnote 3:A specific NYS CLE requirement mandating AI-related training is being considered. See N.Y.S. U.C.S. Advisory Committee Report on Artificial Intelligence and the Courts, December 2025, at page 21.